**ALABAMA BY-PRODUCTS CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**
**Civ. A. No. 7169.**

United States District Court
N. D. Alabama, S. D.
Feb. 18, 1955.

---

William B. White and James O. Screven, Jr., of White, Bradley, Arant, All & Rose, Birmingham, Ala., for plaintiff.

Frank M. Johnson, Jr., U. S. Atty., and Leon J. Hopper, Asst. U. S. Atty., Birmingham, Ala., for the United States.

GROOMS, District Judge.

Plaintiff sues to recover $122,663.78, with interest, representing excess profits taxes and interest paid to the defendant on September 17, 1951, and March 15, 1946, on alleged erroneous and illegal assessments for the years 1943, 1944 and 1945.

### Findings of Fact

The facts are found as stipulated.

The taxpayer here involved has maintained its books and accounts and reported its income for income and excess profits tax purposes upon an accrual basis, and has established a taxable year ending on December 31 of each calendar year. For the years involved it computed its excess profits credit on the invested capital basis under Section 714 of the Internal Revenue Code.[1]

During the years 1942, 1943 and 1944, plaintiff purchased its bonds for less than their face value, realizing income in the respective amounts of $360,348, $219,465 and $296,060. In reporting its income and excess profits taxes for these years, plaintiff duly elected to have such income excluded from its taxable income, and conformed with the requirements of Section 22(b) (9) and Section 113(b) (3), including the application of such income in the reduction of the basis of its properties. Thereafter, the Commissioner of Internal Revenue notified plaintiff that he had determined, among other things, that the plaintiff, in computing equity invested capital under Section 718(a) (4), should have excluded from "accumulated earnings and profits" the 1942, 1943 and 1944 income realized by it from the purchase of its bonds. The result of this determination was to reduce plaintiff's excess profits credit under Section 714, and, consequently, to increase the plaintiff's excess profits taxes for the years 1943, 1944 and 1945, in the respective amounts of $24,240.36, $33,929.82 and $36,304.89, or a total of $94,475.07. In accordance with his determination for each of the years, the Commissioner assessed additional excess profits taxes, plus interest.

The only issue presented in this action is whether or not, for purposes of excess profits taxes, the plaintiff, in computing equity invested capital for the years in controversy, should have included in "accumulated earnings and profits" the 1942, 1943 and 1944 income realized from the purchase of its bonds at less than their face amount, having elected, under Section 22(b) (9), to have such profits excluded from its taxable income and applied in reduction of the basis of its properties pursuant to Section 113 (b) (3).

---

[1]. All Section references herein, unless otherwise indicated, are to the Internal Revenue Code, the numbering of which correspond with that of Title 26, U.S. C.A.

The defendant contends, under the authority of Bangor & Aroostook R. Co. v. Commissioner, 16 T.C. 578, affirmed 1 Cir., 193 F.2d 827, 832, certiorari denied 343 U.S. 934, 72 S.Ct. 770, 96 L.Ed. 1342, that the Commissioner acted correctly in his determination and subsequent assessment. The taxpayer asserts that that decision is unsound and amounts to judicial legislation and should not be followed and that the Commissioner acted erroneously.

### Conclusions of Law

Section 22(b) (9) excludes from gross income attributable to the discharge, within the taxable year, of any indebtedness of a corporate taxpayer, provided the taxpayer at the time of the filing of the return consents to the Regulations prescribed under Section 113(b) (3). If the consent is to be efficacious, the latter Section and the Regulations require that such income be applied to the reduction of the basis of the taxpayer's property held by it during any portion of the taxable year in which such discharge occurs. Subsection (b) of Section 22 provides that the items of income listed in the paragraphs to follow "shall be exempt from taxation under this chapter." As noted by the Court of Appeals, in Bangor & Aroostook, paragraph (9), "as a matter of artistic draftsmanship, is perhaps misplaced in 22(b)." The gain realized under paragraph (9) is not completely excluded as exempt from taxation but recognition of the gain is merely postponed, to be reflected at a later time. Commissioner of Internal Revenue v. Jacobson, 336 U.S. 28, 45–46, 69 S.Ct. 358, 93 L.Ed. 477.

The Tax Court, in Bangor & Aroostook, held that the taxpayer's 1942 bond profit, not having been "recognized" though "realized" in that year, should have been excluded from the "accumulated earnings and profits" as of January 1, 1943. In arriving at that conclusion, the Court considered the concept of "earnings and profits" as that concept had been given expression by Section 115(l), wherein it is provided that as to the sale or other disposition of property,

"Gain or loss so realized shall increase or decrease the earnings and profits to, but not beyond, the extent to which such a realized gain or loss was recognized in computing net income under the law applicable to the year in which such sale or disposition was made."

In the course of its consideration of the concept of "earnings and profits" under Section 115(l), the Court said:

"Surely, by taking pains to make certain that unrecognized gains or losses from sales or other dispositions of property would not be reflected in earnings and profits, Congress could not have intended thereby to produce a different result with respect to other unrecognized gains or losses, merely by failing to mention them. There is nothing in the history of the Second Revenue Act of 1940, which added section 115(l) to the Code, that suggests any such purpose. Basic considerations with respect to the interpretation of the revenue laws do not allow a taxpayer, in the absence of clear language to the contrary, to elect to postpone the recognition of income for purposes of being taxed, and at the same time permit it inconsistently to treat such unrecognized income as earnings and profits. Cf. Commissioner [of Internal Revenue] v. South Texas Lumber Co., 333 U.S. 496 [68 S.Ct. 695, 92 L.Ed. 831]; May, Stern & Co. v. Commissioner, 3 Cir., 181 F.2d 407, certiorari denied, 340 U.S. 814 [71 S.Ct. 42, 95 L.Ed. 598]; White Bros. Co. v. Commissioner, 5 Cir., 180 F.2d 451, certiorari denied, 340 U.S. 825 [71 S.Ct. 59, 95 L.Ed. 606]; Benjamin Siegel, 29 B.T.A. 1289; Corinne S. Koshland, 33 B.T.A. 634."

In conclusion, the Tax Court stated that the case must be distinguished from situations where fully realized income which is exempt from tax, such as interest on State bonds, is included in earnings and profits. Treasury Regulations 111, Section 29.115–3, and particularly

paragraph 2 thereof. It further stated that the method of deferring recognition of the profit and collection of the tax was comparable to the treatment accorded nontaxable exchanges governed by Section 112. The Court of Appeals, following the pattern of the Tax Court, reviewed in detail the concept of "earnings and profits" as the same had been considered under Section 115(*l*) and held that a clearly analogous situation was presented. In commenting upon the comparable method provided by Section 112 of deferring recognition of the profit and the collection of the tax, the Court said:

> " * * * the two sections stem from a common legislative conviction that it is fairer not to impose the income tax forthwith upon the theoretical gains realized from certain transactions, but to postpone the recognition of the gain, and the incidence of the tax, until the occurrence of an economically more significant event."

The Tax Court observed that the taxpayer's position was open to the objection that it might actually require the same gains to be included twice in its earnings and profits. Referring to the result that would follow the application of the rule approved by the Tax Court as contrasted to that which would follow if the taxpayer's contention was adopted, the Court of Appeals made the following pronouncement:

> "The taxpayer's basis having been reduced, by command of the statute, depreciation to be taken by the taxpayer for income tax purposes in the succeeding years will necessarily be lower, and taxable gains correspondingly higher; and as the bond profit is thus gradually recognized and reflected in income, it will at the same time be reflected in earnings and profits. If and when the taxpayer sells the property the basis of which has thus been reduced, the whole of the bond profit will have been recognized and reflected both in

income and in earnings and profits. § 115(*l*). Such treatment of the bond profit seems to be clearly required by the statute and the applicable regulations. It would necessarily follow that the Tax Court properly rejected the taxpayer's contention that the whole amount of the bond profit should be taken into 'accumulated earnings and profits' as of January 1, 1943; for otherwise, the bond profit would be doing double duty in reducing taxpayer's excess profits tax liability for 1943 and subsequent years." 

Merten says that the result attained by that decision seems sound.[2]

Plaintiff asserts that there is one important difference between the facts in the instant case and the facts in Bangor & Aroostook. This difference, it says, consists in the fact, that unlike this taxpayer, the taxpayer in that case did not reduce the basis of its assets in accordance with the requirements of Section 113(b) (3). This difference is without significance. In that case the Commissioner, in auditing the taxpayer's return, reduced the basis of its depreciable property pursuant to that Section, and gave the taxpayer a depreciation deduction for 1942 in the amount of $1736.69, and added the increased income thereby produced to the taxpayer's "accumulated earnings and profits" as of January 1, 1943, for the purpose of computing the taxpayer's excess profits credit in determining the excess profits tax for the year 1943.

The rationale of the decisions in Bangor & Aroostook commends itself to this Court, and in the Court's opinion should be followed in this case. There is no other decision directly in point. In reaching this conclusion, the Court has not overlooked Section 35.718-2 of Treasury Regulations 112, which provides that:

> "(a) *In General.*—The term 'accumulated earnings and profits' is not defined in the Internal Revenue Code. See, however, section 115 and

2. Merten's, Law of Federal Income Taxation, Section 9.37 (Supp.1954).

**256**

the regulations prescribed thereunder as to the effect of certain transactions on earnings and profits, and section 35.718–5 as to the effect of the declaration and distribution of dividends. *In general,* the concept of 'accumulated earnings and profits' for the purpose of the excess profits tax is the same as for the purpose of the income tax."

The Court of Appeals, in Bangor & Aroostook, considered that regulation and noted that the Regulations refer back to Section 115 and the regulations prescribed thereunder, and added:

"The clear inference from the regulations that *truly exempted* income may be carried into 'accumulated earnings and profits', is evidently in accordance with the congressional purpose."

The Court concludes that the income derived by the plaintiff from the purchase of its bonds was "realized" in the years 1942 through 1944, but was not "recognized" and was erroneously included in "accumulated earnings and profits" for the years 1943 through 1945, as equity invested capital under Section 718(a) (4).